(92 Misc. Rep. 483)

## In re THOMAS.

(Supreme Court, Special Term, Oneida County.   December 6, 1915.)

**1.** ELECTIONS ☞299—EXAMINATION OF VOTING MACHINES—STATUTES.

Election Law (Consol. Laws, c. 17) § 417, provides that other articles of the chapter apply as far as practicable to voting by voting machines, except as provided. Section 374, as amended by Laws 1913, c. 821, provides that any candidate shall be entitled as of right to an examination in person or by agent of any ballots upon which his name lawfully appeared as a candidate, but that the court shall prescribe such conditions, as of notice to other candidates or otherwise, as it shall deem proper. A candidate for mayor applied for an examination of voting machines used in the election, and the opposing candidate contended that section 417 related only to the act of voting, as to the time allowed in the booth, etc. *Held*, that such a construction of the section was too narrow, and that a candidate is entitled to examine such machines, since the section is solely to obtain and preserve evidence for any lawful purpose necessary to conserve the rights of a voter, a candidate, or the entire electorate in regard to an election, and such a provision should receive a liberal construction to render it of practical benefit, rather than one removing from its operation all elections at which voting machines are used.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 306, 307; Dec. Dig. ☞299.]

**2.** ELECTIONS ☞299—EXAMINATION OF VOTING MACHINES—TAMPERING—EFFECT.

Where a candidate, opposing the application of another candidate for examination of voting machines used in the election, presents affidavits tending to show that the machines, or some of them, may have been tampered with, the application will nevertheless be granted, since the claim of possible tampering with the machines goes only to the value of the evidence when produced, and not to the right to obtain it, while the obtaining and preserving of evidence obtained upon an examination of voting machines can be used, if relevant and necessary, upon a criminal prosecution, which is in itself reason for the examination, to protect public right.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 306, 307; Dec. Dig. ☞299.]

Application by John G. Thomas for an examination of voting machines.   On return of an order to show cause why an order for the

opening and examination of the machines should not be vacated and set aside, providing in the meantime for a stay. Order to be prepared vacating the stay and denying the motion to vacate.

George C. Morehouse, Warnick J. Kernan, and Daniel E. Meegan, all of Utica, for the motion.

Richard R. Martin and L. N. Southworth, both of Utica, opposed.

ROSS, J. [1] When the voting machines were locked upon election night, the rights of Mr. Smith and Mr. Thomas were fixed, and no power exists in the court, based either on its inherent power or upon the provisions of the Election Law, to change the result then recorded; but the court has the power to assist in ascertaining what was the actual vote cast by the electors. Without such power, the result of an election would often depend, not upon the actual vote cast, but upon the apparent result arising from a mistake, or perchance from the commission of a crime. In furtherance of a plan to give any candidate a full opportunity to protect his rights in this regard, section 374 of the Election Law was enacted, the last section of which reads as follows:

"Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon which his name lawfully appeared as that of a candidate; but the court shall prescribe such conditions as of notice to other candidates or otherwise as it shall deem necessary and proper." Laws 1913, c. 821.

Section 417 of the Election Law provides, with other matters, as follows:

"The provisions of the other articles of this chapter apply as far as practicable to voting by voting machines, except as herein provided. The provisions of the penal law and of this chapter relating to misconduct at elections shall apply to elections with voting machines. * * *"

The learned counsel for Mr. Smith contend that the following clause: "The provisions of the other articles of this chapter apply as far as practicable to voting by voting machines, except as herein provided"—relates solely to the act of voting, as, for instance, the time allowed in the booth, etc. I think this construction is altogether too narrow. The act of voting is only one of the steps essential to recording the voter's choice. His vote has to be counted, reported, recorded, canvassed, and all the other details necessary to ascertain the actual results of the election, and certainly it is as essential to protect the rights of the candidate by an examination of the result recorded by a voting machine as to examine separately the ballots for the purpose of obtaining a record which corresponds with the record already arrived at on the voting machine. In other words, a candidate, under the construction asked for by the representatives of Mr. Smith, if voted for by paper ballots, could examine in detail the ballots and the result; but, because there are no paper ballots connected with the machine in the election herein, he is deprived of the right to examine the result which appears upon the voting machine.

Let us bear in mind the purpose of the section under consideration. In and of itself, it is powerless to accomplish anything towards deter-

mining the result of an election. It is solely for the purpose of obtaining and preserving evidence for any lawful purpose necessary to conserve the rights of a voter, or a candidate, or of the entire electorate, in regard to such election, including possible and proper criminal prosecution, and such a provision should receive a liberal construction to render it of practical benefit, rather than one which would remove from its operation all elections in which voting machines are used; this, especially in view of the provision which limits the time for keeping the machine locked to a period of 30 days.

There are two questions presented upon this motion: First, the power of this court, under the provisions of section 374 of the Election Law, to make an order at the instance of a candidate for an examination of the voting machines which were used at the election in which he was a candidate; and, second, assuming that such power exists, whether because an opposing candidate presents papers tending to show that some of the machines have been tampered with will defeat such an application.

As to the first question, the power of the court, I passed upon this when I made the order herein sought to be vacated, which was made after careful examination. Whether under the language of the section in question, "Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon which his name lawfully appeared as that of a candidate," there is left any discretionary power of the court to refuse such an order when the jurisdictional facts are shown, is perhaps a doubtful question, but upon this I express no opinion. The order herein sought to be vacated follows substantially an order made by this court in Erie county by Mr. Justice Pooley, in the Matter of the Application of Frank M. Stage for an Examination, etc. So far as appears in the record, this order was granted upon an ex parte application, and ordered the opening of any and all ballot boxes and voting machines used in all the election districts in Erie county, and I am informed that the provisions of this order have been carried into effect.

In the Erie county case, Mr. Stage, who obtained an examination, was candidate for auditor, a county office voted for by the voters of the entire county. The voting in the city of Buffalo was with voting machines, and in the towns by paper ballots. The learned counsel for Mr. Smith claims that the right of a candidate cannot be divided, and, because he had the right to examine the ballot boxes in the town, therefore he had the right to examine the machines in the city of Buffalo. This attempt to enlarge a strict statutory right by implication would have been dangerous for Mr. Stage, if his right to examination depended upon the claim of the learned counsel. If his rights are indivisible, and he did not possess the right to examine the machines in the city of Buffalo, he would, upon the theory of the learned counsel, have been deprived of the right to even examine the paper ballots in the towns.

If the claim that a candidate's right cannot be divided means that because, for some reason, legal or physical, he cannot have a complete examination, therefore he is deprived of having any examination, then it is a proposition with which I do not agree, for reasons

more fully set forth further on. It therefore seems to me that the decision of Mr. Justice Pooley in the Erie county case, in which he ordered the voting machines in the city of Buffalo opened, is in no wise impaired because the same order directed that the ballot boxes in the towns be opened and the ballots examined.

[2] As to the second claim, that because an opposing candidate presents affidavits tending to show that the machines or some of them may have been tampered with is an answer to such an application and will defeat it: This claim seems to me to be untenable. The facts presented in the moving affidavits, if shown upon any subsequent trial or proceeding, might well tend to, or possibly, render valueless the information obtained upon the opening of a machine; but because some one has tampered with a witness, has perchance suborned him, is the party who seeks to show certain facts by such witness to be prohibited from calling him at all? Or because some evil-disposed person destroys, partially or entirely, a document I proposed to put in evidence, am I therefore to be deprived of the right to introduce in evidence the fragments that are left? Nay, it goes further than this. Such a claim would prevent me from attempting to put in evidence an exhibit upon the mere claim of an adverse party that it has been mutilated or destroyed, while in fact it may turn out that it has neither been mutilated nor destroyed. In other words, this claim of possible tampering with the machines goes to the value of the evidence when it is hereafter produced, but not to the right to obtain it.

The claim is made, as I understand, by the learned counsel for Mr. Smith, that the alleged tampering with some of the machines should prevent the examination of any. Perhaps I am wrong in this; but, if I am not wrong in supposing this to be the claim presented, I put the case of a party to an action who has 39 witnesses by whom he intends to prove a fact or series of facts, and some one attempts to, or does in fact, suborn 1 or 2 or 3 of the proposed witnesses. Is the party to be deprived of the right to swear the other 36? If this be law, then a partisan of a candidate can, by tampering with one ballot box or one machine, render nugatory all the rights of a candidate under the section in question.

But this is not all. The obtaining and preservation of evidence obtained upon an examination of voting machines can be used, if relevant and necessary, upon a criminal prosecution, and if the inference is true, which Mr. Smith's attorneys seek to draw from their affidavits, that the machines, or some of the machines, have been tampered with, it is a good and sufficient reason why that machine should be opened. Any proceeding by Mr. Thomas, to aid his candidacy is not the only, or even the most important, inquiry herein sought, and, even if such a crime has been committed, it cannot be discovered and punished without such an examination as herein sought. It is of more importance to society and to the people of the city of Utica that, if such a crime has been committed, it should be discovered and punished, than the ascertaining the mere right of one of these gentlemen to the office which presumably either is qualified to fill.

It practically is of little importance to the people of Utica whether Mr. Smith or Mr. Thomas is their next mayor, but it is of infinite

importance that the gentleman who is finally declared elected shall have no stain upon his title. The man or men who seek by any means whatever to deprive the majority of their rightfully elected candidate strike at the basic principles of our institutions. The result of such an examination is to this court entirely immaterial, but it believes that in the orderly administration of justice Mr. Thomas has the right to such an examination.

Let an order be prepared vacating the stay contained in the order made by Mr. Justice L. C. Crouch, and denying the motion to vacate the order heretofore made by Mr. Justice William M. Ross, and further provide for carrying into effect the provisions of said order of November 26, 1915.